UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| ANTONIO DIAZ | * | CIVIL ACTION NO.  10-0340 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| NURSE WESTROP, ET AL. | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the district court, is a motion for summary judgment [doc. # 24] filed by defendants, Nurse Debbie Westrup (incorrectly named in the complaint as "Nurse Westrop"); Nurse Kristi Blackwell; and LCS Correction Services, Inc. ("LCS") (incorrectly named in the complaint as "L.C.S. – Caldwell Detention Center").  For reasons set forth below, it is recommended that the motion for summary judgment be **GRANTED in PART**, and that plaintiff's claims against **all** defendants be **DISMISSED, without prejudice**, on the merits, but **DISMISSED with prejudice** for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915(d).  It is further recommended that the motion for summary judgment otherwise be **DENIED**.

## Relevant Background Facts

Antonio Diaz served two stints at the LCS Caldwell Detention Center in Grayson, Louisiana – once in January 2009, and then again, beginning on July 4, 2009, for charges initiated in Harris County, Texas.  *See* Affidavit of Richard Deville, Def. MSJ, Exh. I; Deposition of Antonio Diaz, pgs. 24-25; Pl. Response.  Diaz contends that from July through August 2009, various officials at the LCS Caldwell Detention Center were deliberately

indifferent to his serious medical needs.  Specifically, he alleges that on, or about July 12-13, 2009, he began to complain to various guards and nurses about abdominal pain that went unheeded and eventually culminated in a July 26, 2009, emergency appendectomy.  Diaz further alleges that the LCS medical staff failed to properly treat his post-surgical wound site which reopened and became infected.[1]

Accordingly, on February 4, 2010, Diaz filed the instant civil rights complaint in the U.S. District Court for the Eastern District of Arkansas pursuant to 42 U.S.C. § 1983 against Nurse Debbie Westrup, Nurse Kristi Blackwell, LCS, and Officer Buck (or Bunke).[2]  Diaz contends that defendants failed to provide him with adequate medical care, and therefore, seeks compensatory damages of $500,000, punitive damages of $500,000, and a change in the policy for meeting inmates' medical needs.  (Compl., ¶ VIII).  On February 23, 2010, the Arkansas court transferred the matter to this court pursuant to 28 U.S.C. § 1406(a).  (Feb. 23, 2010, Order [doc. # 3]).  Following discovery, defendants, Westrup, Blackwell, and LCS filed the instant motion for summary judgment on November 19, 2010.  On December 8, 2010, Diaz filed his response to the motion.  The matter is now before the court.

## Summary Judgment Principles

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby,*

---

[1]  For a more detailed recitation of Diaz's allegations, see the court's March 1, 2010, Memorandum Order.  [doc. # 6].

[2]  The U.S. Marshal was unable to serve defendant Buck, Bunke, or Burk because LCS did not employ an officer by that name.  *See* un-executed return of service [doc. # 18].

2

*Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Id*.

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.  "The court *need* consider only the cited materials, but it *may* consider other materials in the record."  Fed.R.Civ.P. 56(c)(3) (emphasis added).  While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322-23.  This is true "since a complete failure of proof concerning an essential element of

3

the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[3] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  In other words, the movant must affirmatively establish its right to prevail as a matter of law.  *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

## Analysis

Defendants seek dismissal of plaintiff's claims on the twin grounds that 1) Diaz failed to exhaust available administrative remedies before filing suit;[4] and 2) Diaz's complaint fails to state a claim upon which relief can be granted because the evidence demonstrates that defendants were not deliberately indifferent to his serious medical needs.  The court will address the exhaustion issue first.  *Dillon v. Rogers*, 596 F.3d 260, 270-273 (5th Cir. 2010) (typically, courts should resolve exhaustion issues before reaching the merits of the case).  The exhaustion defense may be analyzed in the context of a motion for summary judgment where the non-moving party enjoys the protections of Federal Rule of Civil Procedure 56.  *Id.*

## I.      Exhaustion Principles

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is mandatory, and is required even where the relief sought cannot be granted by the

---

[3]  I.e., beyond doubt.

[4]  Defendants preserved the exhaustion defense in their answer.  [doc. # 19].

administrative process.  *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006)

(citations omitted).  All "available" remedies must be exhausted, whether speedy and effective,

or not.  *Porter v. Nussle*,  534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002).  "Proper exhaustion

requires that the prisoner not only pursue all available avenues of relief but also comply with all

administrative deadlines and procedural rules."  *Johnson v. Kukua*, 342 Fed. Appx. 933, 934 (5th

Cir. Aug. 20, 2009) (unpubl.) (citing *Woodford v. Ngo*, 548 U.S. at 89-93, 126 S.Ct. 2378)).  An

untimely or otherwise procedurally defective administrative grievance does not satisfy the

exhaustion requirement.  *Id*.

      "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong."  *Porter, supra* (citation omitted).  An inmate is required to

"exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary."

*Richbourg v. Horton*, 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted).  A

claim for deliberate indifference to an inmate's serious medical needs is also subject to

exhaustion.  *Harris v. Hegmann*, 198 F.3d 153, 158 (5th Cir. 1999).  Exhaustion also applies to

claims brought against defendants in their official and/or individual capacities.  *See e.g., Williams

v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. Appx. 564 (5th Cir. Sept.

29, 2003) (unpubl.).

      The Fifth Circuit has consistently held that an inmate's ignorance of a prison's grievance

procedures does not excuse his noncompliance.  *Aguirre v. Dyer*, 233 Fed. Appx. 365 (5th Cir.

May 24, 2007) (unpubl.) (citation omitted); *Simkins v. Bridges*, 350 Fed. Appx. 952, 953-954,

(5th Cir. Oct. 28, 2009) (unpubl.) (citation omitted); *Plaisance v. Cain*, 374 Fed. Appx. 560, 561,

( April 15, 2010) (unpubl.) (citation omitted).  Nonetheless, inmates should have "avenues for

discovering the procedural rules governing their grievances." *Dillon, supra* (citations omitted). When an inmate has no means of verifying the administrative grievance process, then misleading information by prison officials may make remedies unavailable. *Id.*

As the Fifth Circuit recently emphasized, "[i]f impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility." *Dillon*, 596 F.3d at 267-268 (citing *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir.2008)). Stated another way, the grievance filing period is tolled only so long as the inmate is actually impeded from invoking and exhausting the process.

Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies. *Dillon*, 596 F.3d at 266. If the court considers evidence beyond the pleadings to resolve the exhaustion issue, then the nonmoving party is entitled to the protections of Rule 56. *Id.*

## II.   The LCS Caldwell Detention Center Had an Available Administrative Remedy Procedure

The uncontroverted evidence establishes that the LCS Caldwell Detention Center had a three step Administrative Remedy Procedure ("ARP") in effect during the relevant period.[5] (Affidavit of Richard Deville; Def. Exh. I; Detainee Handbook, Exh. G; LCS Guideline Manual; Exh. E).[6]  The ARP is set forth in LCS's Detainee Handbook, which Diaz received upon the two

---

[5]  The following facts are further supported by defendants' Statement of Undisputed Material Facts submitted in conjunction with their motion for summary judgment.  Plaintiff did not controvert these facts via a separate, short and concise statement; therefore they are deemed admitted.  LR 56.2; see also Fed.R.Civ.P. 56(e)(2) (court may consider the fact undisputed when a party fails to address another party's assertion of fact).

[6]  Deville was the Warden of the LCS Caldwell Detention Center during the relevant period. *Id.*

6

occasions that he was incarcerated at the LCS Caldwell Detention Center.  (Affidavit of Richard

Deville; Def. Exh. I; Affidavit of Robert McKeithen, Def. Exh. F).[7]  Under the ARP, a detainee is

required to fill out a grievance form or by complete any written communication that contains the

phrase, "[t]his is a grievance under the Administrative Remedy Procedure."  (LCS Detainee

Handbook, Def. Exh. G).  The written grievance must be completed and placed in the Grievance

Box in the facility's dining hall within 30 days of the alleged incident.  *Id.*  The Handbook

cautions that "IF A DETAINEE DOES NOT TIMELY FOLLOW EACH STEP OF THE

PROCEDURE, HE MAY BE BARRED FROM LATER BRINGING HIS GRIEVANCE

FORWARD."  *Id.* (emphasis in original).[8]  Plaintiff does not dispute that LCS-Caldwell

Detention Center had a formal complaint procedure.  (Pl. Depo., pgs. 39-40).

## III.    Diaz Did Not Invoke the Grievance Process

Diaz concedes that he never filed a grievance before filing suit.  (Diaz Depo., pgs. 35-38,

40, 42, 71-72).  Diaz proffers several explanations for failing to file a grievance.  For instance, in

his complaint, he asserted that he had "poor English and writing skills."  (Compl., ¶ 4).  In his

deposition, however, he acknowledged that he had a 9th grade education, and that he could read

and use a dictionary, if necessary.  (Diaz Depo., pg. 11).  Moreover, he never bothered to read the

LCS Detainee Handbook.  (Diaz Depo., pg. 39).  Although Diaz proclaims that he was unaware

of the administrative grievance process at the LCS Caldwell Detention Center, he admits that he

---

[7]  McKeithen was the Chief of Security at LCS Caldwell Detention Center during the
relevant period.  (Affidavit of Robert McKeithen, Def. Exh. F).  Plaintiff admitted that the
facility provided him with a copy of the inmate handbook.  (Diaz Depo., pg. 39; Pl. Resp.).

[8]  As plaintiff concedes that he did not complete the initial step of the ARP, *see*
discussion, *infra*, the court does not address the remaining steps of the ARP.

never asked anyone how to file a complaint (instead of a lawsuit).  (Diaz Depo., pg. 42).[9]

In a September 21, 2010, letter to the court, Diaz suggested that he was unable to file a grievance because he was too ill at that time.  (Sept. 21, 2010, Letter [doc. # 22]).  However, Diaz was able to complete forms (or have someone else complete forms on his behalf) to obtain medical attention both before and after his surgery, when he professed to be in extreme pain.  *See e.g.*, Offender Requests for Med. Care, Def. Exh. C, pgs. 44-46.  Furthermore, Diaz's alleged ill health did not prevent him from securing supporting affidavits signed by other inmates on his behalf, as early as August 16, 2009.  *See* Compl., pgs. 12-13.

In short, Diaz has not presented any viable explanation sufficient to excuse his admitted failure to exhaust the available grievance procedures at the LCS Caldwell Parish Detention Center.

## IV.     Remedy for Failure to Exhaust

The plain language of the PLRA precludes any further action on plaintiff's claims until he has fully exhausted the administrative remedy procedure. *See Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir.1998) (§ 1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a § 1983 suit, rather than while the action is pending ... [t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation.").

Although dismissal for failure to exhaust administrative remedies is typically without

---

[9]  The Detainee Handbook states that, if requested, the Warden will provide detainees with assistance to complete the appropriate forms.  (LCS Detainee Handbook, ¶ B5, Def. Exh. G).

prejudice,[10] the court is authorized to dismiss plaintiff's complaint with prejudice to his right to

re-file it, in forma pauperis ("IFP"):

> [b]y choosing to file and pursue his suit prior to exhausting administrative
> remedies as required, [plaintiff] sought relief to which he was not entitled-that is,
> federal court intervention in prison affairs prior to the prison having had the
> opportunity to address the complaint within its grievance procedures. We
> therefore affirm the district court's order dismissing [plaintiff]'s action with
> prejudice for purposes of proceeding IFP.

*Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (overruled by implication on other
grounds by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 920-21 (2007)).

The foregoing approach is appropriate here.  Accordingly, if plaintiff exhausts his administrative

remedies with respect to the claims raised herein, he may present these § 1983 claims again, but

may not proceed *in forma pauperis* to do so.[11]

        Having determined that plaintiff's suit is subject to dismissal for failure to exhaust

administrative remedies, the court need not reach defendants' alternative grounds for dismissal;

thus, the undersigned will recommend that summary judgment "for failure to state a claim" be

denied.

## V.      Claims Against Officer Buck or Bunke

        The court notes that although Officer Buck or Bunke was never been properly served in

this matter, plaintiff's claims against said defendant – an alleged employee of LCS Caldwell

---

        [10]  *See e.g., Plaisance v. Cain, supra*; *Cooper v. Quarterman*, 342 Fed. Appx. 12, 13 (5th
Cir. July 14, 2009) (unpubl.).

        [11]  Of course, administrative exhaustion requires "proper" exhaustion, i.e., compliance
with an agency's deadlines and other critical procedural rules.  *Woodford, supra*.  At this point,
plaintiff's delay effectively may foreclose his ability to properly exhaust available administrative
remedies.  *See* Exh. G: "IF A DETAINEE DOES NOT TIMELY FOLLOW EACH STEP OF
THE PROCEDURE, HE MAY BE BARRED FROM LATER BRINGING HIS GRIEVANCE
FORWARD."

Detention Center – are also subject to dismissal for failure to exhaust available administrative remedies.  Accordingly, the undersigned will recommend that plaintiff's claims against Officer Buck or Bunke be dismissed.[12]

     For the above-assigned reasons,

**IT IS RECOMMENDED** that the motion for summary judgment [doc. # 24] filed by defendants, Nurse Debbie Westrup (incorrectly named in the complaint as "Nurse Westrop"), Nurse Kristi Blackwell, and LCS Correction Services, Inc. ("LCS") (incorrectly named in the complaint as "L.C.S. – Caldwell Detention Center") be **GRANTED IN PART**, and that plaintiff's claims against **all** defendants be **DISMISSED, without prejudice**, on the merits, but **DISMISSED with prejudice** for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915(d).

     **IT IS FURTHER RECOMMENDED** that the motion for summary judgment otherwise be **DENIED**.

     Under the provisions of 28 U.S.C. § 636(b)(1)(c) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at

---

[12]  The court may grant summary judgment *sua sponte* so long as the adverse party receives adequate notice and a reasonable time to respond.  Fed.R.Civ.P. 56(f); *Stingley v. Den Mar Inc.*, 2009 WL 2762374, *3 (5th Cir. Sept. 1, 2009) (unpubl.) (citing *inter alia*, *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770-71 (5th Cir.2000)).  The instant report and recommendation provides adequate notice to the parties.  *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir.1998)).

the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 8th day of February 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE